UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWN D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01209-TAB-JPH |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT

### I. Introduction

Plaintiff Dawn D. seeks judicial review of the Social Security Administration's decision denying her application for supplemental security income. Plaintiff contends that she demonstrated her presumptive disability by satisfying the requirements of a listing. For the reasons detailed below, the Court remands the ALJ's decision.

### II. Background

On September 10, 2015, Plaintiff filed for supplemental security income, alleging a disability onset date of January 5, 2014. Her application was denied initially and upon reconsideration. An ALJ conducted a hearing and on March 28, 2018, denied Plaintiff's claim. The Appeals Council denied her request for review. Following a complaint seeking judicial review, and a joint motion of the parties, the district court remanded Plaintiff's case on October 24, 2019, for further administrative proceedings. An ALJ conducted a hearing and on January 14, 2021, denied

---

[1] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

Plaintiff's claim. The ALJ found that Plaintiff's severe impairments were degenerative disc disease of the cervical and lumbar spine, depression, anxiety, post-traumatic stress disorder, obesity, and chronic obstructive pulmonary disease. [Filing No. 15-10, at ECF p. 8.] The ALJ found Plaintiff's RFC to be limited as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to only occasionally [sic] use of foot controls with her right lower extremity. She can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes or scaffolds. She should never climb ladders, ropes, scaffolds, or have exposure to unprotected heights, moving mechanical parts, and never operate motor vehicle. She should have no exposure to pulmonary irritants such as concentrated fumes, odors, dusts, and gases. She can concentrate, attend, and persist for 2 hours at a time for up to 8 hours in a workday. She should not perform work that requires a production pace, such as on an assembly line. She should have no interaction with the general public, but can have occasional interaction with supervisors and coworkers.

[Filing No. 15-10, at ECF p. 12.] Continuing with the five-step determination, the ALJ ultimately found that there were many jobs that Plaintiff could have performed in the national economy, like a marker, router, and garment sorter. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the application date[2] through the date of the ALJ's decision.

### III. Discussion

Plaintiff raises two errors, arguing that the ALJ: (1) failed to provide more than a perfunctory discussion of whether she met or equaled Listing 1.04(A), and (2) improperly rejected her treating physician's opinion.

To meet a listing, a claimant must establish with objective medical evidence the precise criteria that is specified. *See* 20 C.F.R. § 416.925; *Sullivan v. Zebley*, 493 U.S. 521, 530-31

---

[2] Supplemental security income is not compensable before the application date. 20 C.F.R. § 416.335.

(1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at Step Three). In the alternative, a claimant can establish "medical equivalence." *See* 20 C.F.R. § 416.926(a)-(b). In considering whether a claimant's impairment meets or equals a listing, an ALJ must discuss the listing by name and offer more than a perfunctory analysis. *See Minnick v. Colvin,* 775 F.3d 929, 935-36 (7th Cir. 2015). To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify evidence of record that was misstated or ignored that met or equaled the criteria. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002). The claimant must also show that a more thorough analysis could have led to a different outcome at Step Three. *Jeske v. Saul*, 955 F.3d 583, 589-91 (7th Cir. 2020).

Listing 1.04 for *Disorders of the spine* "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), [must] result[] in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.04. The listing requires that the diagnostic criteria be accompanied by one of the alternative sets of clinical findings, including relevant here: "A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" *Id.*

The ALJ's discussion of the listing was limited. She explained that "[t]he medical evidence does not establish the existence of the above signs or symptoms. Although the claimant has demonstrated some reduced range of motion, her strength has remained intact, and her

sensation has been described as normal." [Filing No. 15-10, at ECF p. 9.] When discussing her RFC finding, the ALJ also explained:

> In 2015, consistent with the claimant's filing date of this application, imaging was taken of her cervical and lumbar spine after the claimant went to the emergency room alleging back pain and presented with an abnormal gait. Imaging demonstrated degenerative disc disease in both the cervical and lumbar spine, with some disc bulges at the C3-C4 and L5-S1 levels. At follow up appointments with her primary care provider [James D. Kozarek, M.D.], the claimant was noted to have some ongoing tenderness, and although the claimant reported weakness in her right lower extremity, Dr. Kozarek noted that the [electromyography testing] was normal, and that the claimant's failure to put forth effort made the examination more difficult. At the consultative examination in November 2015, the claimant was noted to have poor range of motion, but intact strength, normal reflexes, and intact coordination.

[Filing No. 15-10, at ECF p. 13 (citations omitted).] The MRI taken on July 12, 2015, showed at C3-4:

> There [was] disc desiccation and mild loss of disc height anteri[o]rly. There [was] a broad posterior disc bulge that approximate[d] the spinal cord. The overall volume appear[ed] unchanged [presumably in reference to the 2012 comparison study]. There [was] very mild narrowing of the central canal. Mild foraminal stenosis [was] again appreciated, left greater than right.

[Filing No. 15-7, at ECF p. 60-61.] Plaintiff contends that the ALJ's failure to confront the specific finding that the disc bulge approximated the spinal cord is significant.

Plaintiff also presents evidence that corresponds with the listing's clinical requirements. The preamble to the musculoskeletal listings explains that examinations of the spine should include detailed findings including describing the claimant's "gait . . . motor and sensory abnormalities, muscle spasm, when present, . . . deep tendon reflexes, . . . [and] measurements of grip . . . strength." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(E)(1). Contrary to the ALJ's explanation, there was evidence of decreased muscle strength. On June 13, 2017, Plaintiff's grip strength was reduced at 4/5 on the left, compared with full strength in her right hand, along with decreased "subjective sensation" in her left hand. [Filing No. 15-9, at ECF p. 213.] There were

other relevant findings, including on September 28, 2015, her deep tendon reflexes were absent in her knees, she favored her right leg when walking, though her gait was described as "steady" with "[n]ormal motor" and "no foot drop," she had weakness on the right straight leg test, and "decreased sensation to light touch from [her] knee to foot on [the] right." [Filing No. 15-9, at ECF p. 107.]  A more recent examination by Dr. Kozarek, on January 9, 2018, recorded most of the relevant findings to be normal but Plaintiff had paracervical muscle spasms.  [Filing No. 15-15, at ECF p. 29.]

      Listing 1.04(A), distinguishes the need for straight leg raising tests only if the lower back is involved.  The preamble also explains that "[n]erve root compression results in a specific neuro-anatomic distribution of symptoms and signs depending upon the nerve root(s) compromised."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(K)(1).  An emergency room physician who examined Plaintiff on June 13, 2017, did not think that her left arm pain and weakness were caused by a central cervical etiology.  [Filing No. 15-9, at ECF p. 272.]  And the MRI of her lumbar spine in 2017 did not show "central canal or neuroforaminal stenosis at any level."  [Filing No. 15-7, at ECF p. 64.]  However, there is no medical opinion that addresses whether the positive clinical findings correlate with any demonstrated etiology in this case.  And notably, Plaintiff's decreased grip strength in her left arm post-dated the last medical expert review.  [Filing No. 15-3, at ECF p. 43 (reconsideration review completed on June 23, 2016).]

      To conclude that the listing was not met, the Court would need to supply a rationale that the ALJ did not expressly provide concerning the deficiencies of the evidence vis-a-vis the listing requirements.  According to the *Chenery* Doctrine, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."  *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).  "[H]armless error . . . is applicable to

judicial review of administrative decisions and is thus an exception to the *Chenery* doctrine." *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010) (citations omitted).  However, to apply harmless error, the Court must have "great confidence what the result on remand will be."  *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

      To conclude that the listing was not met, the Court would also need to rely on its own lay opinion about whether the positive clinical findings were consistent with any demonstrated spinal etiology.  As the Seventh Circuit has counseled on many occasions, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted).  Just as ALJs are not permitted to conclude without medical support that the claimant's functioning is inconsistent with a specific diagnosis, the Court is no better equipped to make the necessary determination here.  Accordingly, the Court lacks great confidence that the ALJ would reach the same relevant listing conclusions with a properly developed record.

      At a minimum, the ALJ's perfunctory analysis of Listing 1.04(A) combined with her failure to confront the relevant clinical finding of decreased grip strength requires remand for further consideration.  The ALJ may also want to get an expert opinion on whether the updated evidence meets the listing or Plaintiff's combined impairments equal a listing.  Based on the need for further consideration of the record with possible additional expert input, the Court declines to address Plaintiff argument concerning Dr. Kozarek's opinion.  However, further expert scrutiny could address the significance of Dr. Kozarek's spasm observations in terms of the objective support for his disabling opinion.

### IV.     Conclusion

For the reasons explained above, the ALJ's decision is **REMANDED**, for further consideration of whether Plaintiff met or equaled a listing, her RFC, and any relevant medical opinions.  Final judgment will issue accordingly.

Date:  5/11/2022

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.